## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| NOKIA OF AMERICA CORPORATION, NOKIA SOLUTIONS AND NETWORKS GMBH & CO. KG, | § § § § § § § § § § § § § § | |
| *Plaintiffs*, | | |
| v. | | CIVIL ACTION NO. 2:18-CV-00391-JRG |
| OYSTER OPTICS, LLC, OYSTER OPTICS GMBH, | | |
| *Defendants*. | | |

## **MEMORANDUM OPINION AND ORDER**

Before the Court is the Motion for Summary Judgment of Breach (Dkt. No. 13) filed by Plaintiffs Nokia of America Corporation and Nokia Solutions and Networks GmbH & Co. KG (collectively, "Nokia") ("Nokia's MSJ") and Defendants' Cross-Motion for Summary Judgment of No Breach of Contract (Dkt. No. 54) filed by Defendants Oyster Optics, LLC and Oyster Optics GmbH (collectively, "Oyster") ("Oyster's MSJ") (altogether, the "Motions"). The Court heard oral argument on the Motions on January 29, 2021. (Dkt. No. 89). Having considered the briefing on the Motions and the parties' oral arguments, and for the reasons stated herein, the Court finds that Nokia's MSJ should be **DENIED**, but Oyster's MSJ should be **GRANTED**.

## I. INTRODUCTION

This is a breach of contract case arising out of prior litigation in this Court. In 2016, Oyster Optics, LLC[1] sued[2] Fujitsu Network Communications, Inc. ("FNC" or "Fujitsu")[3] and Alcatel-Lucent USA, Inc. (now Nokia)[4], among others, for patent infringement relating to the use of certain optoelectronics. (Case. No. 2:16-cv-1297, Dkt. No. 1). On May 22, 2018, Oyster and Fujitsu entered into a license agreement (the "Oyster-Fujitsu Agreement" or the "OFA") wherein Fujitsu received a license for certain of Oyster's patents, including those at issue in Case No. 2:16-cv-1302 (the "2016 Case"). Included in that agreement was a release for Fujitsu's customers for their past use or sales or other dispositions of the now-licensed Fujitsu products. (Dkt. No. 13-2 at § 3.1). As Nokia and other Defendants were customers of Fujitsu, after completing supplemental discovery, Nokia and other Defendants filed a Motion for Partial Summary Judgment based on the release in the OFA. (Case. No. 2:16-cv-1302, Dkt. No. 654). The Court granted the Defendants' Motion for Partial Summary Judgment on September 4, 2018, finding that the release of Section 3.1 of the OFA applied to Fujitsu's customers. (Case No. 2:16-cv-1302, Dkt. No. 826 at 7–8). On September 13, 2018, Nokia filed the present breach of contract action as a third-party beneficiary to the OFA stating that Oyster's filing of a complaint in Munich, Germany (the "German Action") after signing

---

[1] Although Oyster Optics, LLC was the only plaintiff in the original 2016 Case, it is also one of the defendants in this case. The Court will hereafter refer to all Oyster entities that are parties in these related actions as "Oyster."
[2] Oyster sued each defendant individually, but the Court later consolidated the actions under the Lead Case No. 2:16-cv-1302. (Case No. 2:16-cv-1302, Dkt. No. 23). Accordingly, the Court will refer to those actions as one consolidated action and to the docket entries post-consolidation in Lead Case No. 2:16-cv-1302.
[3] Alcatel-Lucent was a customer of Fujitsu Optical. (Case No. 2:16-cv-1302, Dkt. No. 826 at 5). Fujitsu Optical is an "Affiliate," as defined in the Oyster-Fujitsu Agreement. (*Id.*). Accordingly, Alcatel-Lucent is a Fujitsu customer under the Oyster-Fujitsu Agreement. (*Id*. at 4).
[4] Alcatel-Lucent USA, Inc, is now known as and is the same entity as Nokia of America Corporation, one of the named plaintiffs in this case. (Dkt. No. 13 at 1 n.1).

the OFA and Oyster's continued assertion of the German Action was in breach of the OFA. (Dkt. No. 1).

On November 1, 2018, Oyster and Nokia jointly requested the Court to sever all claims not resolved by the Court's grant of the Motion for Partial Summary Judgment into a new action so that a final judgment could be entered. (Case No. 2:16-cv-1302, Dkt. No. 845). The parties further requested that the new severed action be administratively closed pending the resolution of any appeals from those cases. (*Id.*). In that joint motion, the parties "agreed to jointly move for entry of final judgments in the -1297 and -1301 litigations such that Oyster may, if it chooses, pursue an appeal of those actions." (*Id.* at 2). The Court subsequently issued a Final Judgment in the 2016 Case in which it ordered that each party bear its own costs and attorneys' fees. (Case No. 2:16-cv-1302, Dkt. No. 851). Oyster appealed this Court's Final Judgment and grant of the Motion for Partial Summary Judgment in the 2016 Case. (Case No. 2:16-cv-1302, Dkt. No. 862). On December 5, 2018, Nokia moved for a finding that the 2016 Case was exceptional and for attorneys' fees under 35 U.S.C. § 285. (Case No. 2:16-cv-1302, Dkt. No. 868). The Court did not address Nokia's subsequent Motion for Attorneys' Fees while the appeal was pending. The Court's grant of Nokia's Motion for Partial Summary Judgment was affirmed by the Federal Circuit in May of 2020. (Case No. 2:16-cv-1302, Dkt. No. 894).

On June 9, 2020, in the present action, Nokia filed its Motion for Summary Judgment (Dkt. No. 13) seeking a judgment from this Court that Oyster had breached the OFA based on its continued assertion of claims that Nokia contends were released under Section 3.1 of the OFA and that Oyster was required to dismiss under Section 3.3 of the OFA. Section 3.1 of the OFA states, in pertinent part, that "Oyster's releases under this Section 3.1 also shall extend to all customers [] of FNC." (Dkt. No. 13-2 at § 3.1). Section 3.3 of the OFA states:

> The releases set forth in Section 3.1 and 3.2 shall foreclose Oyster, FNC, and their respective Affiliates, from raising as against each other any of the released claims in any manner, whether by way of complaint, counter-claim, cross-complaint, motion, application, set-off or recoupment, in any court, administrative agency or other tribunal. Additionally, Oyster, FNC, and their respective Affiliates, each covenants to and shall dismiss with prejudice any released claim commenced or pending in its name in any court, administrative agency or other tribunal.

(*Id.* at § 3.3). Specifically, Nokia asserts that Oyster's failure to dismiss its claims against Nokia at the time of the signing of the OFA—*i.e.*, Oyster's continued participation in the supplemental discovery and summary judgment motion practice in the 2016 Case in this Court and Oyster's pursuit of an appeal at the Federal Circuit[5]—constitute a breach of Section 3.3 of the OFA. (Dkt. No. 13; Dkt. No. 1). On October 15, 2020, Nokia filed an Amended Complaint for Breach of Contract in which Nokia added allegations of breach of contract based on Oyster's continued participation in the 2016 Case and appeal to the Federal Circuit. (Dkt. No. 50).[6] On November 5, 2020, Oyster filed its Motion for Summary Judgment seeking a judgment that it has not breached the OFA. (Dkt. No. 54).

## II. LEGAL AUTHORITY

Summary judgment is warranted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be

---

[5] Notably, Nokia does not seek Summary Judgment of Breach on the basis that Oyster filed and served the German Action, even though this was the entire basis of its original Complaint. (Dkt. No. 13; Dkt. No. 1).

[6] The Court notes that Nokia sought relief from the Court by means of its Motion for Summary Judgment based on factual allegations that had not yet actually been pled. Given that there remain other sufficient bases from which to deny Nokia's Motion for Summary Judgment, the Court does not address such infirmities *infra*.

no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A dispute is genuine only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id*. at 248.

The question of whether a release applies is a question of contract law and is not governed by the exhaustion doctrine. *See, e.g.*, *Realtime Data, LLC v. T-Mobile USA, Inc.*, 936 F. Supp. 2d 795, 805 (E.D. Tex. 2013). The OFA is governed by Texas law. (Dkt. 13-2 at § 9). Under Texas law, whether a contract is ambiguous is a question of law for the Court to be decided by looking at the contract as a whole in light of the circumstances present when the contract was entered. *See, e.g.*, *Nat'l Union Fire Ins. Co. v. CBI Indus., Inc.*, 907 S.W.2d 517, 518 (Tex. 1995). When interpreting an unambiguous contract, the Court should employ the pertinent rules of construction, apply the plain meaning of the contract language, and enforce the contract as written. *Vincent v. Bank of Am., N.A.*, 109 S.W.3d 856, 866–67 (Tex. App.—Dallas 2003, pet. denied).

Further, it is well established that "the primary concern of the court is to ascertain the true intentions of the parties as expressed in the instrument." *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). As a result, the court should consider that the intent "must be taken from the agreement itself, not from the parties' present interpretation, and the agreement must be enforced as it is written." *Parts Indus. Corp. v. A.V.A. Servs., Inc.*, 104 S.W.3d 671, 678 (Tex. App.—Corpus Christi 2003, no pet.). The proper interpretation of a contract will not be altered merely because one of the parties comes to dislike its provisions or thinks that something else is needed. *Nat. Gas Clearinghouse v. Midgard Energy Co.*, 113 S.W.3d 400, 407 (Tex. App.—Amarillo 2003, pet. denied).

In Texas, the claim elements for breach of contract are: (1) a valid contract, (2) performance or tender of performance by one party, (3) breach by the defendant, and

5

(4) damage to the plaintiff as a result of the breach. *Thoroughbred Ventures, LLC v. Disman*, No. 4:18-cv-00318, 2019 WL 2716776, at *2 (E.D. Tex. June 28, 2019) (citation omitted).

A third-party beneficiary is a proper party entitled to sue for breach of a contract made between two other parties if the contracting parties intended to confer a direct benefit on the third party as a part of their agreement. *Chesapeake La., L.P. v. Buffco Prod., Inc.*, No. 2:10-cv-359, 2012 WL 2505574, at *4 (E.D. Tex. June 28, 2012) (applying Texas law) (reversed in part on other grounds). Whether an agreement intends to confer a direct benefit on a third party so as to make that party a third-party beneficiary is a question of law. *Chesapeake*, 2012 WL 2505574, at *4. Texas law imposes "a presumption against, not in favor of third-party beneficiary agreements." *MCI Telecomm.'s Corp. v. Tex. Utilities Elec. Co.*, 995 S.W.2d 647, 652 (Tex. 1999). "Any doubt should be resolved against finding an intent to benefit a third party." *Resolution Tr. Corp. v. Kemp*, 951 F.2d 657, 663 (5th Cir. 1992) (internal citations omitted).

### III.   DISCUSSION

The Court has previously determined that the OFA is unambiguous and accordingly acts herein to construe the text of the OFA as it stands. (Case No. 2:16-cv-1302, Dkt. No. 826 at 7). Nokia claims that Section 3.3 of the OFA required Oyster to immediately dismiss "any released claim," including those against Nokia. (Dkt. No. 13 at 10). The Court previously determined that the release in Section 3.1 of the OFA applied to Fujitsu's customers, including Nokia. (Case No. 2:16-cv-1302, Dkt. No. 826 at 8). Accordingly, Nokia argues that the "any released claim" language in Section 3.3 required Oyster, as a matter of law, to dismiss its claims against Nokia in

the 2016 Case as to all products that contained Fujitsu components, not pursue an appeal, and dismiss the German Action.[7]

The Court disagrees. Nokia was not a signatory to the OFA. (Dkt. No. 13-2). Accordingly, any rights that Nokia may have under the OFA only arise by way of Nokia being a third-party beneficiary of the OFA. (Dkt. No. 13 at 8; Dkt. No. 54 at 16–17). The term "customer" does not appear in Section 3.3 as it did in Section 3.1. (Dkt. No. 13-2 §§ 3.1, 3.3). On the contrary, the first sentence of Section 3.3 states that the releases set forth in Section 3.1 and 3.2 of the OFA foreclose Oyster, Fujitsu, and their Affiliates from raising any of the released claims only "*as against each other*." (*Id.* at § 3.3 (emphasis added)). This first sentence acknowledges that Oyster and Fujitsu and their Affiliates cannot raise released claims against each other in the future. The second sentence of Section 3.3 then starts with the introductory adverb "[a]dditionally." (*Id.*). Nokia improperly reads the term "additionally" to divorce the context of the first sentence from the second sentence. The opposite is true. In fact, "additionally" is a synonym for "furthermore" which Merriam Webster's dictionary defines to mean "in addition to what precedes." *Furthermore*, Merriam Webster's Dictionary (2016) (emphasis added).[8] This term demonstrates that the first sentence (which is limited to any released claim from Section 3.1 as between Oyster, Fujitsu, and their Affiliates) is meaningfully connected to the second sentence of Section 3.3.

---

[7] It is undisputed that the first sentence of Section 3.3 does not apply to Nokia (Dkt. No. 13 at 10; Dkt. No. 69 at 4), which would foreclose the filing of any new actions. However, Nokia does not argue that the filing of the German Action was in violation of the first sentence of Section 3.3, but only that it was in violation of the second sentence of Section 3.3 which requires the dismissal of claims that were "commenced" in the past or currently "pending." (Dkt. No. 13-2 at § 3.3). At the time Nokia argues that the OFA obliged Oyster to act, it appears the action in Germany fell into neither of those categories.

[8] The Court cites the 2016 version of Merriam-Webster's Dictionary, and notes that while the OFA was entered into in 2018, the Merriam Webster's Dictionary definition of "furthermore" has not changed, as far as the Court can tell, in the interim years of 2016 to 2021. *Furthermore*, Merriam-Webster.com Dictionary, (Feb. 1, 2021), https://www.merriam-webster.com/dictionary/furthermore.

Nokia would have this Court either: (1) read the second sentence of Section 3.3 in absolute isolation; or (2) couple the release to customers in Section 3.1 with the second sentence of Section 3.3 without taking into account—and in fact ignoring—the first sentence of Section 3.3. For the Court to construe "any released claim" from the second sentence by giving voice to the first sentence's reference to Section 3.1 but not that same sentence's reference to "as against each other" would be nonsensical. Further, the Court finds the absence of the term "customer" in Section 3.3 to be telling. Oyster knew how to grant rights to Fujitsu's customers, and they explicitly did so in Section 3.1. (Dkt. No. 13-2 at § 3.1). Texas law imposes "a presumption against, not in favor of third-party beneficiary agreements." *MCI*, 995 S.W.2d at 652. "Absent clear indication in the contract that [Oyster] and [Fujitsu] intended to confer a direct benefit to [Nokia], [Nokia] may not maintain an action as a third-party beneficiary." *Id.* (party names substituted). It is far from clear that the parties to the OFA intended to confer any benefit beyond the release to "customers" in Section 3.1 upon Nokia, and "[a]ny doubt should be resolved against finding an intent to benefit a third party." *See Kemp*, 951 F.2d at 663. The Court remains convinced, as it was when it granted Nokia's Motion for Partial Summary Judgment, that the absence of the term "customer" outside of Section 3.1 is significant. (Case No. 2:16-cv-1302, Dkt. No. 826 at 10). As a result, it would be inappropriate under Texas law for this Court to "read in" rights to Fujitsu's customers that are not explicitly specified in the OFA.

Nokia also argued at oral argument that if the second sentence of Section 3.3 applies only to Oyster, Fujitsu, and their Affiliates as against each other, then Section 2 of the OFA titled "Dismissal of Litigation" is superfluous. Section 2 of the OFA states that "[w]ithin seven (7) days . . . the Parties shall cause the Litigation[9] to be dismissed with prejudice . . . [with] each side

---

[9] "Litigation" in the OFA is defined as the 2016 Case. (Dkt. No. 13-2, Recitals at ¶ 2).

8

to bear its own attorneys' fees and costs." (Dkt. No. 13-2 at § 2). This is incorrect. Section 3.3 requires the dismissal of more than simply the 2016 Case. Section 3.3 requires the dismissal of "any released claim commenced or pending in its name in any court, administrative agency or other tribunal." (*Id.* at § 3.3). Accordingly, finding all of Section 3.3 applies only as against Oyster and Fujitsu and their Affiliates, does not render Section 2 meaningless.

The Court is persuaded that the parties intent, as to Section 3.3, from a careful reading of the four corners of the OFA is that the entirety of Section 3.3 (both as to foreclosure of claims in sentence one, and dismissal of claims in sentence two) is limited as to and between Oyster, Fujitsu and their Affiliates and as against each other, but not otherwise. Section 3.3 does not extend to third-party beneficiary "customers" of Fujitsu, including Nokia, in the way that Section 3.1 does.

In light of the above, the Court concludes that Section 3.3 of the OFA does not include an affirmative obligation for Oyster to immediately dismiss its claims against Nokia. Accordingly, and as a matter of law, Oyster did not breach the OFA by failing to either immediately dismiss its claims against Nokia in the 2016 Case, by filing the German Action, or by pursuing an appeal at the Federal Circuit.

## IV. CONCLUSION

Nokia's Motion for Summary Judgment (Dkt. No. 13) should be and hereby is **DENIED**. Oyster's Motion for Summary Judgment (Dkt. No. 54) should be and hereby is **GRANTED**. The Court, consistent herewith, shall enter Final Judgment that Nokia take nothing as against Oyster as a part hereof.

It is further **ORDERED** that this ruling will remain **PROVISIONALLY SEALED** until the parties file joint proposed redactions. Such proposed redactions should include specific explanations for the necessity of such redactions as balanced against the Public's interest in open

judicial proceedings. *Richmond Newspapers v. Virginia*, 448 U.S. 555, 592 (1980) ("[O]pen trials are bulwarks of our free and democratic government: public access to court proceedings is one of the numerous 'checks and balances' of our system, because 'contemporaneous review in the forum of public opinion is an effective restraint on possible abuse of judicial power.'") (quoting *In re Oliver*, 333 U.S. 257, 270 (1948)). The proposed redactions shall be filed within three (3) days of this Order. Failure to submit timely proposed redactions will result in the complete unsealing of the Order, which, in such case, may not be redacted upon later motion made by the parties.

**So ORDERED and SIGNED this 3rd day of February, 2021.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE